## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## KANSAS CITY DIVISION

| | | |
|---|---|---|
| KAY SIEBLER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | **JURY DEMAND** |
| | ) | |
| MISSOURI WESTERN STATE | ) | |
| UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff, KAY SIEBLER, by and through undersigned counsel, and for her Complaint against Defendant, Missouri Western State University ("Defendant" or the "University"), respectfully states and alleges as follows:

### I. NATURE OF THE ACTION

1.      This is an action for employment discrimination and due process violations for injuries that Plaintiff suffered as a result of Defendant's pattern and practice of discrimination and its unlawful retrenchment policy, which both deprived Plaintiff of her due process interest in her tenured position and discriminated against older, female, gay professors at the expense of younger, male, less qualified heterosexual professors.

2.      Defendant unlawfully discriminated against Plaintiff on the basis of her gender, age, and sexual orientation, affecting the terms and conditions of Plaintiff's employment.

3.      The retrenchment policy that arose in response to a purported financial emergency gave no standards as to why certain faculty members would be kept over other faculty members, and its "appeals" process was so limited as to effectively deny terminated employees any

meaningful remedy, and breach to Plaintiff's contract with the Defendant and policies, procedures, established by Defendant to protect against such unlawful practices.

4.      Plaintiff seeks injunctive and declaratory relief, compensatory damages (including back pay and front pay), punitive damages, and reasonable attorneys' fees and costs, along with pre- and post-judgment interest as remedies for Defendant's violation of her rights.

## II. PARTIES

5.      Plaintiff, Kay Siebler, is a citizen of Missouri.  She worked for the University from the fall of 2008 to 2021.

6.      Defendant, Missouri Western State University, is a Missouri governmental entity located in St. Joseph, Missouri.

7.      At all times relevant herein, Defendant had at least fifteen employees and was therefore an "employer" within the meaning of Title VII, the ADEA and the MHRA.

8.      Defendant acted through its officers and employees, and the conduct of an officer or employee acting within the scope of his or her employment or authority is the conduct of the University.

9.      Defendant is liable for the acts of its officers, employees, and agents.

## III. JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over Plaintiff's federal law claims under 28 U.S.C. § 1331, as this case involves questions of federal law.  The Court also has subject matter jurisdiction over Plaintiff's due process claims, as they relate to Plaintiff's rights under the Fourteenth Amendment of the United States Constitution.

11.    This Court has supplemental jurisdiction (28 U.S.C. § 1367) over any remaining Counts of this Complaint because those claims relate to the Counts over which the Court has original federal question jurisdiction.

12.    This Court is a proper venue under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5 because Defendant is subject to this Court's personal jurisdiction by maintaining facilities and business operations in this District, and because the events and unlawful employment practices giving rise to this action occurred in this District.

## IV.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.    Plaintiff used the provided administrative review procedure in the retrenchment policy and such policy was totally useless and the hearing panel would not receive any evidence of Defendant disregarding University policies, procedures, and practices.

14.    Plaintiff timely dually filed her Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR") the Equal Employment Opportunity Commission ("EEOC") pursuant to RSMo. 213.010 et seq. and 42 U.S.C. § 2000e-5(b).

15.    On or about August 13, 2021, the MCHR issued a right to sue letter, which is attached and marked Exhibit 1. That same day, the U.S. Equal Employment Opportunity Commission issued its right to sue letter and is attached hereto as Exhibit 2.

16.    Plaintiff has complied with all administrative prerequisites to bringing this lawsuit and has timely filed this action.

## V.  FACTUAL BACKGROUND

17.    Defendant hired Plaintiff, a now 58-year-old gay female, to be a professor in the English department in the fall of 2008 semester.

3

18.     In the spring 2012 semester, Plaintiff received tenure and was promoted to Full Professor rank.

19.     Plaintiff received her terminal degree in Composition and Rhetoric from Miami University in 2002.

20.     While employed at the University, Plaintiff served on faculty committees, advised student groups, received awards, grants, and attained outstanding performance reviews, acted as Director of the First-Year Writing Program, built and coordinated a Gender and Power Studies program, presented annually at national and international conferences, and published academic articles and books.

21.     In March 2020, the Board of Governors declared a state of financial emergency and instituted a retrenchment policy, which would eliminate or scale back certain departments and eliminate faculty, both tenured and untenured.  This state of alleged financial emergency predates and is unrelated to the ongoing COVID-19 pandemic.

22.     The retrenchment policy was not long-standing.  It was created in response to the Board of Governors declaring a state of financial emergency.  However, President Wilson's direct predecessor as President of the University, Dr. Robert Vartabedian, believes that the current MWSU administration overstated the University's financial problems and that he left the University in good financial condition.

23.     The retrenchment policy provided that if the University's financial condition was so extreme that financial considerations alone dictated that there was no reasonable way and no balanced alternative to alleviate the situation, the University could eliminate programs and/or dismiss tenured faculty.  However, the retrenchment policy only provided a process that determined elimination of programs, not faculty.

4

24.     The Policy was extremely detailed as it pertained to program elimination, which involved the creation of an Academic Review Board ("ARB"), an ARB recommendation to the Provost, a required statement of rationale, mandatory criteria to be considered, a Provost recommendation to the President, and then a President recommendation of the Board of Governors.

25.     However, the retrenchment policy only states that "tenured faculty members may be recommended for dismissal in the event of a Financial Emergency."  It gives no criteria or considerations for the elimination of tenured faculty members, nor does it require that tenured faculty members be advised as to the rationale for the retention of retained faculty members at the expense of terminated faculty members. The Policy afforded no preference for tenure, qualifications, performance reviews or other objective or subjective standards important to higher educations and required by the Universities policies and rules.

26.     Further, the appeals procedure only allows for a termination decision to be reconsidered on the grounds that University procedures (i.e., the retrenchment policy) have not been followed.

27.     Essentially, the retrenchment policy and the appeal process purport to allow the University to terminate a faculty member for any reason, so long as there is a financial justification for the termination.  Thus, the University could terminate a faculty member based on race, religion, gender, national origin, sexuality, or age, but only report that the termination was required by financial distress and follow the University's substandard procedures to ensure that the termination cannot be properly challenged.

28.     Plaintiff was terminated as a result of her gender, age, and sexual orientation, but the University maintained that Plaintiff's termination saved the school money and that it followed

procedure, so Plaintiff was unable to properly appeal her termination, and her termination was upheld.

29.     In the month prior to Plaintiff's termination, the ARB made its recommendations to the Provost on program elimination, but also made recommendations as to key principles that should be followed in eliminating faculty, including expertise, school needs, scholarship and service, contributions to the campus, cost factors, and length of service.  However, since these recommendations as to faculty retention were not part of official University policy, the University maintained that it did not have to follow them.

30.     Plaintiff was informed that despite being a tenured professor she would never receive any future contracts with the University on April 15, 2020 letter from then President Wilson, which merely stated that, "Based on our state of financial emergency and drawing upon the work of the Academic Review Board and Provost's specific recommendations, it is with a heavy heart that I notify you that your employment contract for the 2020-21 academic year will be a terminal contract."  The letter never explained why Plaintiff was terminated instead of the faculty members that were retained, nor did it give any indication what factors were considered in terminating Plaintiff instead of other faculty members.

31.     The faculty members retained were younger, less qualified, untenured, heterosexual professors.  The Defendant has never explained or attempted to explain why such younger, less qualified, untenured, heterosexual professors were retained.

32.     Many (predominantly male and younger) professors were moved to a different teaching position within the university, but Plaintiff was not, nor was she told why she could not be moved to a different position.

6

33.    Despite the obvious limitations of the appeals process, Plaintiff appealed her termination.

34.    Plaintiff's appeal was heard on or about July 8, 2020.  It took place over video and was recorded.  During the appeal, Plaintiff argued that she was never given any justification for her termination, the Provost's key principles were not followed, and that having no procedures or standards for faculty termination meant that all decisions that followed were arbitrary and capricious, and violated the University's policies, procedures, and regulations, and breached Plaintiff's contract with the University.

35.    The cursory appeal process which failed to protect Plaintiff's due process rights was intended to permit the University to carry out discriminatory terminations without scrutiny.

36.    During the appeal, the general counsel for the University, Sarah Cravens, argued that any terminations were purely discretionary, and that Plaintiff was not entitled to know why she was terminated instead of the faculty members that the University retained or reassigned.  Ms. Cravens is no longer with the University.

37.    Specifically, the University's failure to provide an unbiased, fair, neutral appeal process was an act of retaliation against Plaintiff who had engaged in protected activity by appealing her discriminatory selection for reduction in force.

38.    That Plaintiff's termination became final with the expiration of her terminal contract extension at the end of the 2020-2021 academic year on July 31,2021.

39.    President Wilson resigned to take a job as Dean of Temple University's Japan Campus.  Additionally, as of June 30, 2021, the Provost, Doug Davenport, retired from the University, meaning that the two architects of the retrenchment process are no longer with the

7

University.  The University additionally utilized significant funds to retain a search agency to fill these open positions.

40.     Pursuant to the retrenchment policy, Plaintiff was given a terminal contract for the year 2020-2021.  At the conclusion of the 2020-2021 school year, Plaintiff's employment with the University concluded.

41.     Plaintiff's last date of employment with the University was July 31, 2021.  She never received any more opportunities to challenge her termination.

42.     During Plaintiff's terminal year, the University began hiring to replace the terminated employees, all younger and with fewer credentials, something without the minimum credentials to teach university courses, as defined by the Missouri Department of Higher Education.

43.     Also during Plaintiff's terminal year, and upon information and belief, the University gave significant raises to several members of the University administration despite terminating many positions due to an alleged financial exigency which was used to justify a reduction in force aimed at replacing older tenured professors which cheaper, younger, non-tenured professors.

44.     The University used the financial emergency to eliminate older, female, tenured, gay professors without having to give any explanation as to why they were terminated instead of less qualified, younger, male, untenured, heterosexual professors.  This was consistent with Plaintiff's time at the University, whereby the University maintained a culture of discrimination and harassment, whereby women are punished for challenging any member of the University administration, while men face no consequences for similar actions.

45.     Numerous other female professors who challenged the administration were terminated, including the female professor who started the gender studies program (this was the Plaintiff, Kay Siebler) as well as other older females involved in the gender studies program at the University and the female Vice President for Student Affairs. They were more qualified than the predominantly male, younger faculty members who were retained at their expense.

46.     Three faculty members remained seated during the national anthem to protest social injustice and racial inequality, both on campus and beyond. All three faculty members were terminated during retrenchment. One of these faculty members was the Plaintiff.

47.     Additionally, the majority of the faculty that were terminated during the purported financial crisis were over the age of 40. The University used the purported financial crisis as a mechanism to eliminate older faculty members, while protecting younger faculty members. For example, a former dean of the University, now 70 years old, was targeted and terminated on the basis of his age.

48.     Plaintiff was terminated while younger, less qualified, untenured, heterosexual, male faculty under the age of 40 were retained.

49.     In addition to the culture of gender discrimination and harassment, the University promoted a culture that discriminated against faculty members on the basis of their age and sexual orientation.

50.     On April 23, 2021, the University's Vice President for Finance and Administration e-mailed the faculty that, due to additional funds from the University Foundation, COVID relief money, and reduced expenditures, the University had approximately $3.5 million more on hand than it did two years prior. Thus, the Vice President said that he did not anticipate any further cuts and was considering a recommendation that the University end its state of emergency.

9

51.     Plaintiff has spent countless hours searching for another job, creating a freelance portfolio, and teaching part-time temporary positions. Because of her termination, she has lost contributions to her retirement account, which Plaintiff calculated will reduce her future available retirement savings in excess of $75,000.00.

## VI.  CLAIMS FOR RELIEF

### COUNT I
**Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000e ("Title VII")**

COMES NOW Plaintiff and, for Count I of her cause of action for gender discrimination, states and alleges:

52.     Plaintiff restates and realleges each and every allegation heretofore set forth herein.

53.     Plaintiff, who is female, is a member of a protected class within the meaning of Title VII.

54.     Plaintiff also openly identifies as a member of the LGBTQ community

55.     Plaintiff was qualified to hold the position she held.

56.     Defendant is a covered entity and an employer as defined in Title VII in that it is engaged in an industry affecting commerce that has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

57.     Plaintiff is a female who was treated less favorably than one or more of her male counterparts and those who do not identify as LGBTQ.

58.     Plaintiff, along with several other female faculty members, were wrongfully terminated during a purported financial crisis, without explanation, despite their credentials being superior to their male peers who were retained.

10

59.     Plaintiff's gender, including Plaintiff's identification as LGBTQ, was a factor in Defendant's discriminatory actions, inactions, decisions, conduct, and/or termination of Plaintiff as alleged herein.

60.     Defendant's discriminatory actions, inactions, decisions, conduct, and/or termination of Plaintiff affected the compensation, terms, conditions, and/or privileges of Plaintiff's employment as described herein.

61.     Defendant's actions, inactions, decisions, conduct, and/or termination of Plaintiff deprived Plaintiff of employment opportunities or otherwise adversely affected her status as an employee because of her gender.

62.     Defendant's actions, inactions, decisions, conduct and termination of Plaintiff constituted unlawful employment discrimination against Plaintiff in violation of Title VII.

63.     Defendant's actions, and/or inactions occurred by and/or through its agents, servants, and/or employees acting within the course and scope of their employment.

64.     By not taking any action to stop its employees from continuing their ongoing discrimination against Plaintiff on the basis of her gender, Defendant ratified, authorized, and/or condoned this conduct.

65.     Plaintiff took reasonable advantage of the limited preventative and corrective opportunities Defendant had available to combat any gender discrimination and made Defendant aware of her complaints.

66.     As a direct, legal, and proximate result of this discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional damages in an amount to be proven at trial

67.     Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard to Plaintiff's right to be free from harassment and discrimination based on gender such that she is entitled to an award of punitive damages.

68.     Plaintiff is also entitled to her reasonable attorneys' fees and costs of suit.

## COUNT II
## Gender Discrimination in Violation of the MHRA

69.      Plaintiff restates and realleges each and every allegation heretofore set forth herein.

70.     Plaintiff, who is female, is a member of a protected class within the meaning of the MHRA.

71.     Plaintiff was qualified to hold the position she held.

72.     Defendant is a covered entity and an employer as defined in the MHRA.

73.     Plaintiff is a female who was treated less favorably than one or more of her male counterparts.

74.     Plaintiff, along with several other female faculty members, were wrongfully terminated during a purported financial crisis, without explanation, despite their credentials being superior to their male peers who were retained.

75.     Plaintiff's gender was a factor in Defendant's discriminatory actions, inactions, decisions, conduct, and/or termination of Plaintiff as alleged herein.

76.     Defendant's discriminatory actions, inactions, decisions, conduct, and/or termination of Plaintiff affected the compensation, terms, conditions, and/or privileges of Plaintiff's employment as described herein.

77.     Defendant's actions, inactions, decisions, conduct, and/or termination of Plaintiff deprived Plaintiff of employment opportunities or otherwise adversely affected her status as an employee because of her gender.

78.     Defendant's actions, inactions, decisions, conduct and termination of Plaintiff constituted unlawful employment discrimination against Plaintiff in violation of the MHRA.

79.     Defendant's actions, and/or inactions occurred by and/or through its agents, servants, and/or employees acting within the course and scope of their employment.

80.     By not taking any action to stop its employees from continuing their ongoing discrimination against Plaintiff on the basis of her gender, Defendant ratified, authorized, and/or condoned this conduct.

81.     Plaintiff took reasonable advantage of the limited preventative and corrective opportunities Defendant had available to combat any gender discrimination and made Defendant aware of her complaints.

82.     As a direct, legal, and proximate result of this discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional damages in an amount to be proven at trial

83.     Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard to Plaintiff's right to be free from harassment and discrimination based on gender such that she is entitled to an award of punitive damages.

84.     Plaintiff is also entitled to her reasonable attorneys' fees and costs of suit.

**Age Discrimination in Violation of**
**The Age Discrimination in Employment Act, 29 U.S.C. § 621,** *et seq.* **("ADEA")**

COMES NOW Plaintiff and, for Count II of her cause of action for age discrimination, states and alleges:

85.    Plaintiff restates and realleges each and every allegation heretofore set forth herein.

86.    Plaintiff was 57 years old at the time Defendant discriminated against her and terminated her employment, and therefore is a member of the protected class of age in that she is at least 40 years of age.

87.    Defendant is an employer as defined in the ADEA as it is engaged in an industry affecting commerce that has 20 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

88.    Plaintiff was subject to age discrimination at the hands of Defendant and/or Defendant's agents and subordinates, in that Defendant permitted its employees to discriminate against her because of her age.

89.    Plaintiff, along with several other staff members over the age of 40, was wrongfully terminated during a purported financial crisis, without explanation, despite their credentials being superior to their younger peers who were retained.

90.    Defendant has a pattern of favoring employees under the age of 40 and disfavoring and discriminating against employees over the age of 40.

91.    Plaintiff's age was a factor in the discriminatory treatment she received and was a factor in her termination.  Defendant has not been able to allege any valid reason for her termination.

14

92.     The age discrimination affected a term, condition, or privilege of Plaintiff's employment because the conduct was continuous, outrageous, humiliating, and unreasonably interfered with Plaintiff's ability to perform the functions of her employment.

93.     By not taking any action to stop its employees from continuing their ongoing discrimination against Plaintiff on the basis of her age, Defendant ratified, authorized, and/or condoned this conduct.

94.     Defendant knew of its pattern of age discrimination and failed to take appropriate action, or any remedial action whatsoever.

95.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

96.     As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered emotional distress, mental anguish, pain and suffering, and related compensatory damages and injuries.

97.     As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of liquidated damages in an amount sufficient to punish Defendant or deter it and others from such conduct in the future.

98.     Plaintiff is also entitled to her reasonable attorneys' fees and costs of suit.

**COUNT IV**
**Age Discrimination in Violation of the MHRA**

99.     Plaintiff restates and realleges each and every allegation heretofore set forth herein.

100.     Plaintiff was 57 years old at the time Defendant discriminated against her and terminated her employment, and therefore is a member of the protected class of age in that she is at least 40 years of age.

101.     Defendant is an employer as defined in the ADEA as it is engaged in an industry affecting commerce that has 20 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

102.     Plaintiff was subject to age discrimination at the hands of Defendant and/or Defendant's agents and subordinates, in that Defendant permitted its employees to discriminate against her because of her age.

103.     Plaintiff, along with several other staff members over the age of 40, was wrongfully terminated during a purported financial crisis, without explanation, despite their credentials being superior to their younger peers who were retained.

104.     Defendant has a pattern of favoring employees under the age of 40 and disfavoring and discriminating against employees over the age of 40.

105.     Plaintiff's age was a factor in the discriminatory treatment she received and was a factor in her termination.  Defendant has not been able to allege any valid reason for her termination.

106.     The age discrimination affected a term, condition, or privilege of Plaintiff's employment because the conduct was continuous, outrageous, humiliating, and unreasonably interfered with Plaintiff's ability to perform the functions of her employment.

107.     By not taking any action to stop its employees from continuing their ongoing discrimination against Plaintiff on the basis of her age, Defendant ratified, authorized, and/or condoned this conduct.

108. Defendant knew of its pattern of age discrimination and failed to take appropriate action, or any remedial action whatsoever.

109. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

110. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered emotional distress, mental anguish, pain and suffering, and related compensatory damages and injuries.

111. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or deter it and others from such conduct in the future.

112. Plaintiff is also entitled to her reasonable attorneys' fees and costs of suit.

<u>**COUNT V**</u>
**Violation of Procedural Due Process**

COMES NOW Plaintiff and, for Count III of her cause of action for violation of procedural due process, states and alleges

113. Plaintiff restates and realleges each and every allegation heretofore set forth herein.

114. The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving any person of life, liberty, or property, without due process of law.

115. Plaintiff had a property interest in her tenue and continuing employment.

116. Due process gives a tenured professor a legal right to a hearing regarding termination of services.

17

117.    Plaintiff was hired in 2008 for the fall semester and received tenure and promoted to Full Professor in the 2012 spring semester.

118.    Defendant deprived Plaintiff of her tenured position without due process of law.

119.    Defendant's "retrenchment policy," while provided substantial detail regarding the elimination of programs, gave absolutely no guidelines for the elimination of faculty (by Defendant's own admission).  Thus, the elimination of faculty was subject to nothing more than the whims of the review committee and University administration.

120.    Pursuant to that retrenchment policy, Plaintiff was informed that her employment was terminated, and she was to serve a terminal contract for the year 2020-21.

121.    Plaintiff was given an appeals process, but the appeals process was extremely limited, only allowing Plaintiff to contest 1) that financial savings would not accrue; and 2) that University procedures were not followed.

122.    As described herein, the University procedures set no guidelines, criteria, or process for faculty elimination; thus, the University's finding that its substandard procedures were followed is self-serving, rings hollow, and provides no actual protection of Plaintiff's due process interests.

123.    The particularities of the situation demanded that Plaintiff receive more due process and be afforded an actual opportunity to challenge her termination.

124.    Plaintiff was entitled to an explanation of the employer's evidence but was deprived of this explanation because the University's procedures did not require disclosure of the reasons for termination.

125.    Because Plaintiff was never informed of the reason for her termination, Defendant violated due process by not showing sufficient cause for her termination.

18

126.    The hearing itself was not meaningful, as Defendant continued its refusal to share its reasons for terminating Plaintiff, despite Plaintiff's numerous requests.  Thus, Plaintiff had no reasonable opportunity to challenge her termination when the reasons for termination were withheld from her.

127.    As a direct, legal, and proximate result of this deprivation of procedural due process, Plaintiff has sustained, and will continue to sustain, economic and emotional damages in an amount to be proven at trial.

<u>COUNT VI</u>
**Violation of Substantive Due Process**

COMES NOW Plaintiff and, for Count IV of her cause of action for violation of substantive due process, states and alleges:

128.    Plaintiff restates and realleges each and every allegation heretofore set forth herein.

129.    The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving any person of life, liberty, or property, without due process of law.

130.    Plaintiff had a property interest in her tenure and continuing employment.

131.    Plaintiff has a substantive due process right to be free from discharge for reasons that are arbitrary and capricious, or in other words, for reasons that are trivial, unrelated to the education process, or wholly unsupported by a basis in fact.

132.    Plaintiff's termination from the University was for arbitrary and capricious reasons.

133.    In fact, the reasons for Plaintiff's termination from the University were so arbitrary and capricious, that the University refused to disclose the reasons for her termination.

19

134.    During the appeals hearing, the University argues that terminations were purely discretionary, and that Plaintiff was not entitled to know why she was terminated instead of the faculty members the University chose to retain or reassign.

135.    The appeals committee wrote that the retrenchment policy "does not provide details regarding the nature of the required justification for termination." Thus, "the lack of an explanation in regard to why Plaintiff, specifically, was determined to receive a terminal contract does not appear to constitute a breach of university procedure."

136.    Defendant's refusal to disclose the reasons for Plaintiff's termination prevented Plaintiff from being able to meaningfully respond, making the entire process inherently arbitrary and capricious.

137.    Because Plaintiff was never informed of the reason for her termination, Defendant violated due process by not showing sufficient cause for her termination.

138.    As a direct, legal, and proximate result of this deprivation of substantive due process, Plaintiff's employment was terminated, and her tenure was revoked. Plaintiff has sustained, and will continue to sustain, economic and emotional damages in an amount to be proven at trial.

## COUNT VII
### Retaliation in Violation of the MHRA

139.    Plaintiff engaged in protected activity by filing a grievance alleging that her selection for reduction in force was discriminatory as a result of her age and gender.

140.    After invoking the grievance process, Defendant retaliated against Plaintiff by failing and refusing to provide a fair and impartial grievance process and failing to comply with Plaintiff's contractual right of tenure.

141. Plaintiff was over the age of 40.

142. Plaintiff's gender is female.

143. RSMo 213.070 provides, "[i]t shall be in unlawful discriminatory practice for an employer…to retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter…"

144. Plaintiff's grievances related to unlawful discrimination prohibited by Chapter 213.

145. As a result of Plaintiff's grievance, she was denied due process and was further denied the future protections of tenure and or re-employment upon the conclusion of any financial exigency.

146. Defendant's retaliation against Plaintiff was because of her filing a grievance.

147. Plaintiff was treated differently with respect to the terms and conditions of employment as a result of her filing a grievance in that she was denied due process and future employment as a tenured professor.

148. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

149. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered emotional distress, mental anguish, pain and suffering, and related compensatory damages and injuries.

150. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or deter it and others from such conduct in the future.

151. Plaintiff is entitled to recovery of her reasonable attorney's fees in connection with this action.

## COUNT VIII
### Breach of Contract

COMES NOW Plaintiff and, for Count V of her cause of action for breach of contract, states and alleges:

152. Plaintiff restates and realleges each and every allegation heretofore set forth herein.

153. Plaintiff has a permanent employment contract with the Defendant as set and established by law, policy, rule, and regulation of the University, including continuing and ongoing employment.

154. Said contract can only be terminated for cause under the processes and procedures of the Teacher Tenure Policy of the University.

155. Defendant breached that agreement and terminated Plaintiff's employment contrary to the terms and conditions established by law, rule, regulation, and policy of the University, including but not limited to:

a. Defendant terminated Plaintiff's continued employment and retained untenured professors in positions Plaintiff was qualified by education and experienced to teach.

b. Defendant terminated Plaintiff's employment without notice of cause or opportunity to be heard.

c. Defendant terminated Plaintiff's employment without hearing on any causes the University had for such termination.

156.	As a direct and proximate result of the Defendant's breach of Plaintiff's employment contract, the Plaintiff suffered, and will continue to suffer, substantial and permanent progressive damage in the form of lost wages, benefits, and retirement contributions in a sum in excess of $1 million.

WHEREFORE, Plaintiff prays the Court enter judgment for Plaintiff and against the Defendant for her damages herein incurred and expended, and for such other and further relief as this Court may deem reasonable and just.

## COUNT IX
**First Amendment Retaliation**

157.	Plaintiff was a public employee employed by a state university that was funded in whole or in part by the State of Missouri.

158.	Plaintiff and at least two other professors publicly remained seated for the national anthem and University events as a means of drawing attention to the public concerns of social and racial injustice and discrimination both on the campus and in the United States.

159.	Plaintiff and the other two professors who publicly remained seated at University events during the national anthem were selected for termination as part of the retrenchment process.

160.	Plaintiff's refusal to stand for the national anthem as a means of drawing attention to the public concern of racial and social injustice and discrimination played a part in the defendant's decision to terminate Plaintiff in connection with the retrenchment process.

161.	Defendant was acting under the color of state law when it terminated Plaintiff.

162.	As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others,

including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or deter it and others from such conduct in the future.

163.   Plaintiff is entitled to her reasonable attorney's fees as a result of enforcing her rights in accordance with 42 USC. 1983.

## VII.  PLAINTIFF'S DEMAND FOR A JURY TRIAL

Plaintiff hereby requests and demands a trial by jury on all issues so triable.

## VIII.  DESIGNATED PLACE OF TRIAL

Plaintiff hereby designates Kansas City, Missouri, as the place of trial in this matter.

Date: _____        Respectfully submitted,

**KAPKE & WILLERTH L.L.C.**

_/s/ George E. Kapke_
George E. Kapke                     MO #20858
George E. Kapke Jr.                 MO #52114
The Chape1 Ridge Law Building
3304 N.E. Ralph Powell Road
Lee's Summit, Missouri 64064
Telephone:  (816) 461-3800
Facsimile:  (816) 254-8014
gek@kapkewillerth.com
**ATTORNEY FOR PLAINTIFF**