# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| KAY SIEBLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-06152-CV-SJ-GAF |
| | ) |
| MISSOURI WESTERN STATE | ) |
| UNIVERSITY, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Now before the Court is Defendants Missouri Western State University ("MWSU" or the "University"), Rick Ebersold, Kayla Schoonover, Al Landes, Lisa Norton, Lee Tieman, Bob Wollenman, Dr. Elizabeth Kennedy, Marc Mangenaro, Darrell Morrison, Dr. Doug Davenport, and Sarah Cravens's (collectively "Defendants") partial Motion to Dismiss, arguing Plaintiff Melinda Kovacs ("Plaintiff") has failed to state a claim in Counts IV and V of her Second Amended Complaint. (Doc. # 27). Plaintiff opposes. (Doc. # 30). For the following reasons, Defendants' partial Motion to Dismiss is DENIED in part and GRANTED in part.[1]

---

[1] Also pending is Defendant's motion to dismiss certain counts in Plaintiff's initial complaint. (Doc. # 7). Plaintiff filed her First Amended Complaint on January 12, 2022 and her Second Amended Complaint on February 16, 2022, thereby mooting Defendant's first motion to dismiss. Accordingly, Defendants first motion to dismiss (Doc. # 10) is DENIED as moot.

Additionally, Defendants filed a motion for extension of time to file its reply brief, which is GRANTED. The Court has considered the contents of that reply brief in reaching its decision herein.

# DISCUSSION

I. **BACKGROUND**

On February 16, 2022, Plaintiff filed her Second Amended Complaint, alleging in part that Defendants violated her substantive and procedural due process rights when they terminated her following the 2020-21 school year. (Doc. # 20 ("SAC")). Plaintiff, a 58-year-old gay female, earned her terminal degree in Composition and Rhetoric from Miami University in 2002. (*Id.* at ¶¶ 29, 31). She worked for the University from 2008 until 2021 as a professor in the English Department. (*Id.* at ¶¶ 5, 29, 118). Plaintiff received tenure during the 2012 spring semester. (*Id.* at ¶¶ 20, 118). While employed by MWSU, Plaintiff served on the faculty committees; advised student groups; received awards, grants, and outstanding performance reviews; acted as Director of the First-Year Writing Program; built and coordinated a Gender and Power Studies program; presented annually at national and international conferences; and published academic articles and books. (*Id.* at ¶ 32).

In March 2020, the University's Board of Governors declared a purported state of financial emergency and instituted a retrenchment policy to eliminate or scale back certain departments and eliminate faculty, both tenured and untenured. (*Id.* at ¶ 33). The purported state of financial emergency was unrelated to the ongoing COVID-19 pandemic. (*Id.*). Plaintiff alleges the purported state of financial emergency was not legitimate because the direct predecessor President stated he left the University in good financial condition; and the University took actions inconsistent with a state of financial emergency, such as utilizing significant funds to retain a

2

Case 5:21-cv-06152-GAF   Document 37   Filed 04/28/22   Page 2 of 10

search agency to fill open administrator positions, giving raises to several faculty members, and replacing terminated employees. (*Id.* at ¶¶ 35, 54, 57-58).

The retrenchment policy only provided a process that determined the elimination of programs, not faculty. (*Id.* at ¶¶ 36, 120). Although the policy was extremely detailed as it pertained to program elimination, the policy only stated that "tenured faculty members may be recommended for dismissal" without providing any criteria or considerations for their eliminations. (*Id.* at ¶¶ 38-39, 121, 125). The policy did not require the University to disclose the rationale for the retention of retained faculty members at the expense of terminated faculty members. (*Id.* at ¶ 39). Nor did it afford preference for tenure, qualifications, performance reviews, or other objective or subjective standards. (*Id.*). The policy additionally provided that MWSU would make efforts to place tenured faculty in open positions. (*Id.* at ¶ 127). The appeals procedure only allowed a termination decision to be reconsidered on two grounds: (1) financial savings will not accrue; or (2) University procedures (*i.e.*, the retrenchment policy) had not been followed. (*Id.* at ¶¶ 40-41, 124).

Plaintiff was informed of her termination in an April 15, 2022 letter, which stated that her employment contract for the 2020-21 academic year would be a terminal contract due to the financial emergency. (*Id.* at ¶¶ 44, 123). The letter did not indicate why she had been terminated instead of the retained faculty members or state the factors considered in reaching such decision. (*Id.*). MWSU made no effort to place Plaintiff in an open position. (*Id.* at ¶ 127). Plaintiff's last date of employment with MWSU was July 31, 2021. (*Id.* at 53).

Plaintiff appealed her termination, arguing "she was never given any justification for her termination, the Provost's key principles were not followed, and that having no procedures or standards for faculty termination meant that all decisions that followed were arbitrary and

capricious." (*Id.* at ¶ 48). During the appeal, Defendant Cravens, then-general counsel for the University, stated that any terminations were purely discretionary, and that Plaintiff was not entitled to know why she was terminated in lieu of other faculty members. (*Id.* at ¶¶ 51, 138-39). The appeals committee admitted that "the retrenchment policy 'does not provide details regarding the nature of the required justification for termination,'" and therefore, "'the lack of an explanation in regard to why Dr. Kovacs, specifically, was determined to receive a terminal contract does not appear to constitute a breach of university procedure.'" (*Id.* at ¶ 140).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief may be granted. When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court treats all well-pleaded facts as true and grants the non-moving party all reasonable inferences from the facts. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation" and such "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). A Rule 12(b)(6) motion should be granted only if the non-moving party fails to plead facts sufficient to state a claim "that is plausible on its face" and would entitle the party to the relief requested. *Twombly*, 550 U.S. at 570. "A claim is facially plausible where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 371 (8th Cir. 2017).

### III. ANALYSIS

Defendants argue Plaintiff fails to state claims for violations of her due process rights in Counts IV and V. (Doc. # 28). Defendants contend Plaintiff was not entitled to any procedural due process rights under the circumstances, and even if she were entitled to protections, the appeals process satisfied those procedural rights. (*Id.* at pp. 7-11). Regarding Plaintiff's substantive due process claim, Defendants assert Plaintiff's allegations are insufficient. (*Id.* at pp. 5-7). Plaintiff contends Defendants' arguments are without merit because she has properly pleaded all claims. (Doc. # 30).

#### A. Count IV: Procedural Due Process

It is well-established that a tenured professor employed by a public college has a property interest in continued employment that is safeguarded by due process. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576-77 (1972). To comply with due process requirements, "'[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'" *Nagel v. City of Jamestown, N.D.*, 952 F.3d 923, 932 (8th Cir. 2020) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). However, courts have acknowledged a "reorganization exception" to general due process requirements, which applies when an employee's position has been eliminated during a *legitimate* reduction in force. *See Lampman v. Ternus*, No. C10-3025-MWB, 2012 WL 379938, at *10 (N.D. Iowa Feb. 6, 2012) (collecting cases).[2]

Plaintiff's allegations, when viewed in her favor, raise a plausible question about whether MWSU's retrenchment policy was in fact legitimate. The former President stated he left the

---

[2] The Eighth Circuit has not been presented with the opportunity to address the reorganization exception but has noted in dicta that pre-layoff hearings are not necessary in ordinary, budgetary

5

University in good financial condition. (SAC, ¶ 35). Further, MWSU took actions inconsistent with a state of financial emergency, such as giving raises to several faculty members, replacing terminated employees, and expanding several programs. (*Id.* at ¶¶ 54, 57-58). Defendants argue that, even if one accepts these facts as true, it does not indicate that the University's Board of Governors illegitimately declared a financial emergency. (Doc. # 28, pp. 8-9). Defendants' argument requires the Court to discredit a public statement made by someone with intimate information about the University's financial state and assume facts not alleged in the Amended Complaint. Both asks are beyond the scope of the Court's authority when ruling a motion to dismiss for failure to state a claim. *See Sebrite Agency, Inc. v. Platt*, 884 F. Supp. 2d 912, 916 (D. Minn. 2012) (declining to consider evidence outside pleadings and making credibility determinations on motion to dismiss for failure to state a claim) (citing *Evans v. McDonnell Aircraft Corp.*, 395 F.2d 359, 361 (8th Cir. 1968); Fed. R. Civ. P. 12(d)). Accordingly, dismissal based on the reorganization exception to due process claims is inappropriate at this stage.

Defendants alternatively argue that the appeals process provided by the University satisfied procedural due process requirements. (Doc. # 28, pp. 10-11). "The essential requirements of [procedural] due process . . . are notice and an opportunity to respond." *Loudermill*, 470 U.S. at 546. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.*

First, if the declared financial emergency was merely a sham as alleged, then MWSU did not give Plaintiff proper notice of the reasons for her termination in the April 15, 2020 letter. MWSU's sole, stated reason for Plaintiff's termination was the financial emergency. (SAC, ¶¶ 44,

---

layoff situations. *Praprotnik v. City of St. Louis*, 798 F.2d 1168, 1178 (8th Cir. 1986), *rev'd on other grounds*, 485 U.S. 112 (1988).

123). If there was no financial emergency, then Plaintiff must have been terminated for some other reason. Consequently, the University failed to provide the first essential requirement of procedural due process—notice of the true reasons for Plaintiff's termination—when viewing the allegations in Plaintiff's favor.

Second, MWSU created the appeals procedure under the guise of a legitimate reduction in force. The appeals procedure only allowed a termination decision to be reconsidered on two grounds: (1) financial savings will not accrue; or (2) University procedures (*i.e.*, the retrenchment policy) had not been followed. (SAC, ¶¶ 40-41, 124). If Plaintiff was terminated for some reason beyond financial savings, the appeals procedure prohibited her from challenging the decision for those reasons, thereby denying her the second essential requirement of procedural due process—an opportunity to respond.

However, even if the University properly declared a financial emergency and the retrenchment policy was legitimate, the Second Amended Complaint states a plausible claim that the retrenchment policy and the appeals procedure set forth therein did not meet the procedural due process requirements. Although the retrenchment policy provided a detailed process to identify which departments and programs were subject to downsizing, it lacked any standards to determine which employees/positions within the targeted departments and programs would be eliminated. (SAC, ¶¶ 36, 38-39, 120-21, 125). Indeed, MWSU's general counsel and the committee reviewing Plaintiff's appeal admitted the choice of which employees were retained in lieu of Plaintiff was discretionary and the retrenchment policy did not require an explanation of the decision to terminate her. (*Id.* at ¶¶ 51, 138-40).

Notice and pre-termination hearings are required during a reduction in force when the dismissal is based on personal performance factors. *Cf. Rodreguez-Sanchez v. Mun. of Santa*

7

Case 5:21-cv-06152-GAF   Document 37   Filed 04/28/22   Page 7 of 10

*Isabel*, 658 F.3d 125, 130 (1st Cir. 2011) (holding that "pre-termination hearings are not required by due process where a bona fide government reorganization plan bases dismissals on factors unrelated to personal performance"). Due to lack of established criteria for determining which employees/positions would be eliminated, the University did not afford Plaintiff the opportunity to appeal the retention of others to her detriment, which may have included personal performance considerations. As such, Plaintiff has plausibly alleged a violation of procedural due process.

**B.     Count V: Substantive Due Process**

Substantive due process "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (cleaned up). Under Eighth Circuit precedent, a tenured professor at a state university has "a substantive due process right to be free from discharge for reasons that are 'arbitrary and capricious,' or in other words, for reasons that are trivial, unrelated to the education process, or wholly unsupported by a basis in fact." *Morris v. Clifford*, 903 F.2d 574, 577 (8th Cir. 1990). More recent precedent holds that plaintiffs alleging substantive due process violations face a "high standard,"

> as substantive due process is concerned with violations of personal rights so severe, so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 937-38 (8th Cir. 2012).

Whether conduct shocks the conscience is a question of law. *Kingsley v. Lawrence Cty., Mo.*, 964 F.3d 690, 701 (8th Cir. 2020). "[T]he 'shock the conscience' standard is satisfied where the conduct was 'intended to injure in some way unjustifiable by any government interest,' or in

8

some circumstances if it resulted from deliberate indifference." *Rosales-Mireles v. United States*, --U.S.--, 138 S. Ct. 1897, 1906 (2018) (quoting *City of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998)). "'Only a purpose to cause harm *unrelated to the legitimate object of* the government action in question will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation.'" *Mitchell v. Dakota Cty. Soc. Servs.*, 959 F.3d 887, 898 (8th Cir. 2020) (emphasis in original) (quoting *Folkerts v. City of Waverly*, 707 F.3d 975, 981 (8th Cir. 2013)).

In her opposition brief, Plaintiff does not address Defendants' argument that she failed to plausibly allege that her termination shocks the conscience. (Doc. # 30, pp. 12-13). As such, Plaintiff has forfeited any argument that her termination meets the "high standard" for a substantive due process claim. *See Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020) (claim waived when party fails to address argument for dismissal in its opposition brief); *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Tr.*, 558 F.3d 731, 735 (8th Cir. 2009) (same). Even if Plaintiff has not waived her substantive due process claim, her chief argument—that MWSU unilaterally took Plaintiff's protected property right in tenure without explanation, cause, process, or compensation—is a procedural due process claim. (Doc. # 30, pp. 12-13). Further, Plaintiff admits that "[i]t is not uncommon for public universities and colleges to attack tenured faculty as a means of cost savings." (*Id.* at p. 13). This admission all but establishes that MWSU's action, although wrong, is not conscience shocking. Consequently, Count V fails as a matter of law and is subject to dismissal.

## **CONCLUSION**

Plaintiff has plausibly alleged that Defendants did not provide her with notice and an opportunity to be heard when MWSU terminated her. Plaintiff has forfeited her substantive due

process claim, or alternatively, the claim fails as a matter of law. For these reasons and the reasons discussed above, Defendants' Motion to Dismiss is DENIED on Count IV and GRANTED on Count V.

**IT IS SO ORDERED.**

s/ Gary A. Fenner  
GARY A. FENNER, JUDGE  
UNITED STATES DISTRICT COURT

DATED: April 28, 2022